# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| DOROTHY COLEMAN individually, | ) | |
| and as next of kin for the minor child, | ) | |
| JAZZMINE COLEMAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 08-2265-STA-dkv |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| SHELBY COUNTY JUVENILE COURT,) | | |
| and HENRY HODGES, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT

---

Before the Court are the Motions to Dismiss or Alternatively Motions for Summary Judgment filed by Shelby County Government and the Shelby County Juvenile Court (D.E. # 20, 25, 30)[1], the initial Motion having been filed on July 1, 2008, and the Motion to Dismiss or Alternatively Motion for Summary Judgment filed by Henry Hodges (D.E. # 36) filed on July 22, 2008. Plaintiff filed a response in opposition to the Motions (D.E. # 47) on August 25, 2008. For the reasons discussed below, the Motions are **GRANTED**.

---

[1] Defendant Shelby County made a series of irregular filings related to the underlying Motion to Dismiss/Motion for Summary Judgment including the separate filing of several affidavits in support of the Motion. As a result, the docket in this matter is cluttered with multiple filings related to the instant Motion.

1

## BACKGROUND

Plaintiff Dorothy Coleman, individually and acting on behalf of her minor child Jazzmine, brought this action pursuant to 42 U.S.C.A. § 1983. However, for the reasons discussed below, the Court finds that Dorothy Coleman should be dismissed as a Plaintiff. Therefore, Jazzmine Coleman ("Plaintiff") is the only Plaintiff with standing to bring this claim.

Plaintiff alleges that Defendant Hodges ("Hodges") was employed as a supervisor at the Shelby County Juvenile Court ("Juvenile Court") in the Detention Center. Compl. ¶ 9. According to Plaintiff, as early as March 2004, Defendant Shelby County ("Shelby County") was aware of complaints against Hodges concerning his inappropriate personal relationships with minor girls being held at Juvenile Court under his supervision. *Id*. at ¶ 10. A that time, Ronnie Clark, the deputy administrator of Juvenile Court, wrote a memorandum about the allegations to Wayne Rubenstein, the Juvenile Court administrator; however, no investigation was conducted and no disciplinary action followed. *Id*. According to Clark's memorandum, another Juvenile Court employee complained that Hodges had permitted one minor female to use the telephone and not others. Clark Aff. Clark met with Hodges and drafted the memorandum in which he instructed Hodges not to get involved in the cases or the personal issues of detainees. *Id*. After the memorandum was placed in Hodges' personnel file, Hodges continued to supervise minor girls at Juvenile Court. Compl. ¶ *10.*

Plaintiff was brought to Juvenile Court in January 2006 after she was picked up by the Memphis Police Department. *Id*. at ¶ 11. According to an affidavit filed by Shelby County, Plaintiff came into the Juvenile Court Detention Center on January 28, 2006, at 6:47 P.M. Powell Aff ¶ 8. At that time Plaintiff was listed as a runaway from the California Department of

Children Services. Compl. ¶ 11. Plaintiff alleges that by February 2006, Hodges had begun to pull Plaintiff out of her quarters at odd hours of the night and engaged in inappropriate conduct with her while he was on duty at Juvenile Court. *Id*. at ¶ 12. However, Defendants have averred that Plaintiff was released from Juvenile Court on February 1, 2008, around 2:32 P.M. Powell Aff. ¶ 8. Hodges did not report for work on February 1, 2008, until 3:00 P.M. Powell Aff. ex.1, 6.

On February 14, 2006, Lula Pope ("Pope"), the aunt of Plaintiff, telephoned Rick Powell, the deputy administrator at the Juvenile Court at the time. Powell Aff. ¶ 4. Pope complained that Hodges had become "too friendly" with Plaintiff during her time at Juvenile Court. *Id*. According to Powell, Pope informed that Plaintiff had run away from California and was in Nashville, Tennessee, at that time. *Id*. at ¶ 5. Pope alleged that Hodges had purchased a bus ticket for her niece, which she used to travel from Fresno, California to Memphis on February 12, 2006. *Id*. at ¶ 6.[2] Pope also informed Powell that she intended to contact the Nashville Police and ask them to arrest her niece and send her back to California. *Id*. at ¶ 5. Upon investigating the matter, Powell learned that Nashville Police arrested Plaintiff on or about February 15, 2006. *Id*. at ¶ 8. Powell arranged for Nashville juvenile authorities to obtain a statement from Plaintiff concerning any contact she had with Hodges while she was housed at the Shelby County Juvenile Court from January 28 through February 1, 2006. *Id*. at ¶ 8.

---

[2] Plaintiff alleges that on March 16, 2006, Hodges used information available to him at Juvenile Court to contact Plaintiff and arranged to send her the bus ticket. *Id*. at ¶ 14. This assertion is contradicted by Powell, Pope, and Plaintiff herself. However, the Court also notes that Plaintiff ran away a second time from the custody of California Child Protective Services on February 24, 2006. Amendment to Shelby County Brief (D.E. # 44). There is no evidence, however, that Hodges purchased more than one bus ticket for Plaintiff.

Plaintiff produced such a statement on February 17, 2006, which was then forwarded to Powell and included in his investigation. *Id*. at ¶ 8. Plaintiff's unsworn, unattested statement indicates that upon her release Hodges gave her the telephone number for the intake area at Shelby County Juvenile Court in order to contact him. Coleman Aff. According to Plaintiff, Hodges was going to help her to be placed with her sister in Memphis and get a job. *Id*. When Plaintiff arrived back in California, she telephoned Hodges and expressed her desire to be with her sister. *Id*. Plaintiff then asked Hodges to buy her bus ticket back to Memphis. *Id*. Plaintiff concluded her statement by writing, "Mr. Hodges all he is trying to do is place me with my family somewhere I want to be." *Id*.

On February 27, 2006, Pope filed a formal complaint with Juvenile Court about Hodges' contact with Plaintiff. *Id*. at ¶ 13. As a result of his role in facilitating Plaintiff's return to Memphis, Hodges was questioned by the Shelby County Sheriffs Department and cited for contributing to the delinquency of a minor under Tenn. Code Ann. § 37-1-156. Compl. ¶ 16; Campbell Aff, ex. 1.

According to Plaintiff, Shelby County conducted a "minor investigation" into the charges without interviewing Plaintiff herself about the claims. Compl. ¶ 13. Shelby County did, in fact, conduct disciplinary proceedings. Following a disciplinary hearing attended by Hodges and other administrators at Juvenile Court, Delois Campbell, the administrator of personnel services for Juvenile Court, issued a report on the "final disposition" of Hodges' "major discipline" dated March 3, 2006. Campbell Aff., ex 1. The report detailed the allegations about Hodges' conduct

regarding Plaintiff.[3]  In her findings of fact, Campbell reported that while Plaintiff was in the

custody of Juvenile Court, Hodges had contacted her sister to have her come to get Plaintiff.  *Id.*

The sister did not wish to get Plaintiff because Plaintiff had stolen $350.00 from the sister's

friend.  *Id.*  Hodges encouraged Plaintiff's sister to work out the problem and perhaps help

Plaintiff find a job and re-pay the money.  *Id.*  Unaware that Plaintiff's sister did not have

custody of her, Hodges went on to offer to help Plaintiff find a job.  *Id.*  It was only when

Plaintiff was being taken to the airport for the flight back to California that Hodges learned that

she was a runaway.  *Id.*

According to Hodges, within a few days of Plaintiff's release from Juvenile Court, her

sister telephoned Hodges and asked for his help in buying a bus ticket which would allow

Plaintiff to return to Memphis to retrieve her belongings.  *Id.*  Hodges spent approximately $50

of his own money to allow Plaintiff's sister to purchase the ticket.  *Id.*  Following Plaintiff's

return, Hodges learned that she had broken into her sister's home, stolen some money, and then

left with her own belongings.  *Id.*

In addition to his citation for buying the bus ticket, Hodges was suspended by Shelby

County pending an investigation.  *Id.*  Hodges told his supervisors at his disciplinary hearing that

he had made a mistake in buying the bus ticket for Plaintiff.  *Id.*  Hodges explained that issues in

his personal life had affected his judgment.  *Id.*  As for the nature of his contact with Plaintiff,

Hodges denied that there was anything inappropriate about their relationship, specifically that he

had been sexually involved with her.  *Id.*  Campbell warned Hodges about becoming too

---

[3] Campbell's report also addressed separate allegations about Hodges' inappropriate
contact with another minor female.  The underlying facts of that incident are not related to the
facts of the case at bar.

involved personally with the youths at Juvenile Court and cautioned him to exercise better judgment. *Id*. Based on the findings from the disciplinary hearing, Campbell suspended Hodges from his duties for fifteen (15) workdays without pay and placed him on a six-month probation period following his return to work. *Id*.[4]

Despite Hodges' denial to his employer, Plaintiff alleges that Hodges forced her to enter into a sexual relationship with him. The relationship allegedly began after Hodges sent Plaintiff the bus ticket to return to Memphis. At that time, Hodges coerced Plaintiff into having sex with him and threatened to send her back to California if she refused. Compl. ¶ 14. In late March 2006, Plaintiff was sent back to California and returned to her mother in the state of Washington. *Id*. at ¶ 16. Plaintiff contends that Hodges again made contact with her after her return to Memphis and engaged in a sexual relationship with her from June 2007 to November 2007. *Id*. at ¶ 17. According to Plaintiff, Hodges was dismissed by Juvenile Court from his position as a supervisor in April 2008 after allegations of inappropriate relationships with other minor females were made. *Id*. at ¶ 18.

Defendants argue that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. First, Shelby County argues that Plaintiff Dorothy Coleman lacks standing to sue on her own behalf for any injury that she allegedly suffered as a result of the alleged constitutional tort committed against her daughter. Second, Shelby County contends that Dorothy Coleman lacks standing to sue on behalf of Jazzmine because Jazzmine reached the age of majority on June 19, 2008. Third, Shelby County contends that Shelby

---

[4] Hodges was also advised to seek counseling for the personal issues he described in his disciplinary hearing.

County Juvenile Court should be dismissed as it is only a department of Shelby County Government. Finally, Shelby County argues that the Complaint does not state a Section 1983 claim against Shelby County. Plaintiff has not alleged that she was injured as a result of official Shelby County policy and that such policy was the moving force behind the alleged injury. Plaintiff has further failed to state a claim that Shelby County negligently hired Hodges or negligently investigated the complaints against him concerning his relationship with minor females under his supervision. Plaintiff must allege that Shelby County's failure to investigate was intentional or so reckless that it shocked the conscience. Likewise, Plaintiff has failed to state a Section 1983 claim against Shelby County because Hodges's buying a bus ticket for Plaintiff was not done under color of state law. Therefore, the Motion to Dismiss should be granted.

Shelby County has also argued in the alternative, that it is entitled to summary judgment as to all claims. Shelby County has produced several affidavits and other pieces of documentary proof in support of its Motion, which are beyond the pleadings themselves. Therefore, should the Court consider that evidence, the Court must treat the motion to dismiss as a motion for summary judgment. Shelby County argues that this evidence controverts several allegations found in the Complaint and shifts the burden to Plaintiffs to come forward with something more than their allegations. More specifically, Shelby County contends that in light of the facts established in the affidavits and other documents produced in support of the Motion, Plaintiffs cannot demonstrate that Shelby County has a policy or custom which was the moving force behind the alleged tort. Shelby County believes that it is entitled to summary judgment as to any claim that it was negligent in hiring Hodges. Shelby County conducted a criminal background

check and performed a psychological examination of Hodges prior to his hiring.[5]  Likewise, Shelby County was not negligent in its investigation of the 2004 complaint against Hodges. Furthermore, Hodges never acted under color of state law at any time during his alleged misconduct towards Plaintiff.  Contrary to the allegations in the Complaint, Plaintiff left the Juvenile Court detention center at 2:32 P.M. on February 1, 2006, before Hodges had arrived for work that evening.  Plaintiff was never again housed at Juvenile Court.  Therefore, it cannot be true that Hodges began pulling Plaintiff out of her quarters at odd times of the night in February 2006.  Hodges' alleged relationship including sexual contact with Plaintiff at all times after her release from Juvenile Court detention amounts only to Hodges' personal business and were not undertaken under color of state law.

Hodges makes many of the same arguments in his separate Motion to Dismiss, or alternatively, a Motion for Summary Judgment.  Hodges contends that he never had any other contact with Plaintiff after he purchased a bus ticket for her in February 2006.  Like Shelby County, Hodges argues that Plaintiffs cannot establish all of the elements of a Section 1983 claim against him.  As a matter of law, none of Plaintiffs' allegations about Hodges' conduct can be construed as actions under color of law.  As for issues of fact, Hodges avers that he cannot have taken Plaintiff from her quarters at Juvenile Court during February 2006 because Plaintiff left Juvenile Court on February 1, 2006, before Hodges came on duty for his shift that evening. Hodges also denies that he ever had sexual contact with Plaintiff at any time.  Furthermore, Hodges was never alone with Plaintiff in the Juvenile Court Detention Center.  In light of these facts and Plaintiffs' inability to prove that any of Hodges's alleged conduct was under color of

_____

[5] Aff. of Dini Malone (D.E. # 28).

state law, Hodges argues that the Motion should be granted.

Plaintiff has responded in opposition to Defendants' Motions. First, Plaintiff asserts that her mother has standing to bring suit on her behalf because Plaintiff was a minor at the time of the incidents alleged and at the time the Complaint was filed. Second, Plaintiff contends that she has properly alleged and can prove that Shelby County's custom or practice was to train, supervise, and discipline its employees inadequately. This policy was adopted with deliberate indifference towards the rights of Plaintiff and other similarly situated minor females. More specifically, Plaintiff argues that Shelby County had a duty to protect her while she was in the custody of the Juvenile Court. By its failure to investigate allegations against Hodges and properly discipline him, Shelby County failed to protect Plaintiff's Eighth Amendment rights. This deprivation of a constitutional right was a result of Shelby County's policy. Plaintiff contends that Shelby County is liable under Section 1983 because it had knowledge of Hodges's conduct and did nothing to correct the situation. Shelby County's deliberate indifference was the moving force behind Plaintiff's injury. Plaintiff further argues that Hodges was acting under color of state law because his actions were made possible by a misuse of his power which he held as a state employee. Hodges exercised "fear and control" over Plaintiff because he acted with the presumed authority of Shelby County.

As for the material facts at issue, Plaintiff contends that the number of contested facts makes summary judgment inappropriate in this case. However, Plaintiff relies only on the facts as alleged in her Complaint as evidence that there are issues of material fact to be resolved at trial. Plaintiff has produced no further affidavit or other evidence in response to Defendants' Motions for Summary Judgment.

In its Reply brief, Shelby County argues that Plaintiffs have failed to carry their burden when presented with a properly supported Motion for Summary Judgment. Plaintiffs in this case have effectively rested on their Complaint to argue that there are issues of material fact that make summary judgment inappropriate. Plaintiffs have not gone beyond the facts alleged in the Complaint to present evidentiary support for their factual contentions sufficient to create issues of material fact.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."[6]

Shelby County has styled its Motion as a "Motion to Dismiss or in the alternative Motion for Summary Judgment." The Motion recites the applicable law governing both motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56. Furthermore, Shelby County produced with its Motion a series of affidavits controverting some of the factual assertions contained in Plaintiff's Complaint. Fed. R. Civ. P. 12(d) provides that

> If, on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary

---

[6] *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly,* 127 S.Ct. at 1974 (2007)).

judgment under Rule 56.[7]

However, the Court retains the discretion to consider or exclude such extrinsic evidence presented with a Rule 12(b)(6) to dismiss.[8]

In light of Shelby County's choice to present its Motions as motions for summary judgment, Shelby County's briefing of the applicable law governing motions for summary judgment, and the production of significant documentary evidence which is outside the pleadings, the Court will treat its Motions as motions for summary judgment. Furthermore, because Plaintiff was presented with the Motions as motions for summary judgment and Plaintiff briefed the applicable law on the standard of review for a motion for summary judgment, Plaintiff had notice that the Court could take up Defendants' Motions as motions for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[9]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[10] When the motion is supported by documentary proof such

---

[7] Fed. R. Civ. P. 12(d); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008).

[8] *Jones*, 521 F. 3d at 561. *See also Pueschel v. United States*, 369 F.3d 345, 353 n. 3, (4th Cir. 2004); *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 701).

[9] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[11]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[12]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[13]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[14]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[15]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[16]  Finally, the "judge may not make credibility determinations or weigh the evidence."[17]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any

---

[11] *Celotex*, 477 U.S. at 324.

[12] *Matsushita*, 475 U.S. at 586.

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[14] *Id*. at 251-52 (1989).

[15] *Celotex*, 477 U.S. at 322.

[16] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[17] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

material fact and . . . the moving party is entitled to judgment as a matter of law."[18]

### I. Standing of Dorothy Coleman

Plaintiff argues without citation to any authority, that Dorothy Coleman is a proper party even though Plaintiff has reached the age of majority. Plaintiff contends that she was a minor at the time the Complaint was filed and at all times relevant to the acts alleged in the Complaint. Thus, her mother is a proper representative. It appears to the Court that Plaintiff reached the age of majority on June 19, 2008. Therefore, her mother Dorothy Coleman is dismissed as a party in her representative capacity.[19]

Likewise, it is settled in this Circuit that a claim under Section 1983 "is entirely personal to the direct victim of the alleged constitutional tort."[20] Therefore, a family member of the purported victim has no right to recover under Section 1983 for his or her own alleged injuries.[21] Therefore, Defendants are entitled to summary judgment as to all of Dorothy Coleman's claims for her own losses.

### II. Claims Against Shelby County Juvenile Court

---

[18] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[19] *Phillips v. Anderson County Bd. of Educ.*, 259 Fed. Appx. 842, 843 n. 1 (6th Cir. 2008).

[20] *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted).

[21] *Id.* ("no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members").

Plaintiff has named Shelby County Juvenile Court as a party in this matter. Shelby County has argued that the Juvenile Court is not a proper party because the Juvenile Court is simply a department within Shelby County government and not a separate legal entity. Plaintiff has not responded to Shelby County's argument on this point. Municipal departments, offices, and commissioners are normally not considered entities subject to suit.[22] It is undisputed that Juvenile Court is simply a department within Shelby County government and not a separate legal entity. Therefore, any claim against Juvenile Court is actually a claim against Shelby County. The Court concludes that the Juvenile Court is not a proper party in this matter and should be dismissed.

### III. Section 1983 Claim

The Court holds that Plaintiff's Section 1983 claims fail because she has failed to create a genuine issue of material fact as to whether the Defendants were deliberately indifferent to her constitutional rights. Section 1983 creates a cause of action when there is a deprivation "of any rights, privileges, or immunities secured by the Constitution," as a result "of any statute, ordinance, regulation, custom, or usage, of any State."[23] Therefore, Plaintiff must establish that she suffered the deprivation of a right, which appears to be undisputed in this case. The Sixth Circuit has ruled that "no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause" and that a citizen has "a clearly established right under the substantive component of the Due Process Clause to personal security

---

[22] Martin A. Schwartz & Kathryn A. Urbonya, *Section 1983 Litigation* 85 (2d ed. 2008).

[23] 42 U.S.C. § 1983.

and to bodily integrity."[24] In this case Plaintiff has alleged that Hodges coerced her into a sexual relationship. While Defendants have strenuously argued that Hodges was not acting under color of law, Defendants do not dispute that Plaintiff has a right to be free from sexual abuse from a state actor. Therefore, the Court holds that Plaintiff could establish that she has a constitutional right to be free from sexual abuse.

However, the Court rules that Plaintiff has failed to prove that Defendants are liable to her pursuant to Section 1983. The Court will analyze her claims as to Shelby County and Hodges separately.

## A. *Shelby County*

In cases of local government liability such as this one against Shelby County, a plaintiff must allege the following: (1) that the plaintiff has suffered a deprivation of a constitutional right; and (2) the local government is responsible for that violation.[25] Furthermore, a local governmental entity, such as Shelby County, "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [entity] itself is the wrongdoer."[26] A plaintiff must allege that the constitutional tort was the result of a policy

---

[24] *Doe v. Magoffin County Fiscal Ct.*, 174 Fed Appx. 962 (6th Cir. 2006).

[25] *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

[26] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992). *See also Jett v. Dallas Independent School District*, 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental bodies); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983).

or custom of the local government entity itself.[27]  A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law."[28]  In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy."[29]  It must reflect a course of action deliberately chosen from among various alternatives.[30]  In short, a "custom" is a "legal institution" not memorialized by written law.[31]  Additionally, Plaintiff must show a direct causal link between the custom and the constitutional deprivation, that is, "the particular injury was incurred because of the execution of that policy."[32]

In *Doe v. Claiborne County, Tenn.*, the Sixth Circuit applied these Section 1983 principles to a minor female's claim that the local government had failed to act to prevent her

---

[27] *City of St. Louis v. Praprotnik*, 458 U.S. 112, 122 (1988) (interpreting rejection of *respondeat superior* liability by *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (same); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county and holding that "in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality", citing *Pembaur*).

[28] *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993).

[29] *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

[30] *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

[31] *Feliciano,* 988 F.2d at 655.

[32] *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993) (citation omitted), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

sexual abuse while she was a student in the public schools. There the Sixth Circuit set forth the elements of a municipal liability claim for sexual abuse under an "inaction" theory. The Court finds *Claiborne County* persuasive. Like Doe in that case, Plaintiff in the case at bar alleges that she was the victim of sexual abuse due to Shelby County's failure to act to prevent its employee from abusing her. Therefore, the Court will apply the test articulated in *Claiborne County* for a Section 1983 claim under an inaction theory. Plaintiff must show (1) the existence of a clear and persistent pattern of sexual abuse by Hodges or other Shelby County employees; (2) notice or constructive notice on the part of Shelby County; (3) Shelby County's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that Shelby County's custom was the "moving force" or direct causal link in the constitutional deprivation.[33]

Plaintiff has failed to adduce any evidence from which a reasonable juror could find that Shelby County had a policy or custom that amounted to deliberate indifference to her constitutional rights. The Sixth Circuit has described the custom requirement as "an essential element" of a Section 1983 claim brought under an "inaction" theory.[34] A plaintiff must establish that the need to act is so obvious that the local government entity's "'conscious'" decision not to act can be said to amount to a 'policy' of deliberate indifference" to a plaintiff's constitutional rights.[35] In the context of sexual abuse, the Sixth Circuit has said that "'Deliberate indifference' does not mean a collection of sloppy, or even reckless, oversights; it means

---

[33] *See Claiborne County*, 103 F.3d at 508.

[34] *Id.*

[35] *City of Canton,* 489 U.S. at 389, 109 S.Ct. at 1205.

evidence showing an obvious, deliberate indifference to sexual abuse."[36]

Here Plaintiff has failed to establish that Shelby County had a "custom" that reflected a deliberate indifference to the sexual abuse of the minor females detained at the Shelby County Juvenile Court. Shelby County has established that it conducted psychological evaluations and criminal background checks including a check of the sex offender registry as part of its hiring process. Hodges' check revealed no prior history of any criminal conduct and no history of sexual offenses whatsoever. Thus, it is clear that Shelby County was not deliberately indifferent to the risk of sexual abuse when hiring employees like Hodges who would work with minor females.[37]

Furthermore, it cannot be said that Shelby County had a custom of inaction once allegations of inappropriate conduct were made. Indeed at no time before Plaintiff's brief stay at Juvenile Court had anyone accused Hodges of engaging in sexual relationships with minor females or any form of sexual abuse. On the single prior occasion when allegations about Hodges' conduct were made, Shelby County took action promptly. In 2004 a co-worker complained that Hodges showed favoritism when he allowed one girl to use the telephone after others were told they could not. Shelby County promptly investigated that complaint and took action to remind Hodges of county policy. Nothing from the 2004 complaint suggested that Hodges was engaged in any form of sexual misconduct. When Plaintiff's aunt made her

---

[36] *Claiborne County*, 103 F.3d at 508.

[37] *Magoffin County*, 174 Fed Appx. at 962, 968-69 (finding no evidence that local court's policy or custom in its hiring practices caused sexual assault suffered by minor female at hands of court custodial worker) (Assailant's prior criminal activities "do not make it plainly obvious that [assailant] would commit sexual assault").

18

complaint to Shelby County in 2006, there was no allegation that Hodges had engaged in a sexual relationship with Plaintiff.   In response to the complaint, Shelby County promptly investigated the matter and even obtained a statement from Plaintiff herself in which she declared that Hodges had not behaved inappropriately but was only trying to help her.  At that point Shelby County conducted a disciplinary hearing and suspended Hodges without pay for three weeks.  There was no finding, however, that Hodges had sexually abused Plaintiff or any other minor female under his supervision.

In light of these facts, Plaintiff has failed to establish that Shelby County had a policy or custom of inaction which amounted to deliberate indifference to the sexual abuse of the minor females detained at the Shelby County Juvenile Court.  Therefore, Shelby County is entitled to summary judgment as a matter of law, and Defendants' Motions as to this claim are granted.


**B.      *Henry Hodges***

In order to hold Hodges liable under Section 1983 for any of his alleged wrongs, Plaintiff must establish that Hodges acted under color of law when he deprived Plaintiff of her constitutional rights.  Section 1983 does not provide a cause of action "unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office.[38]  A person "acts under color of state law when he abuses the position given to him by the

---

[38] *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 49-50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("The traditional definition of acting under color of state law requires that the defendant... exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state

state."[39]  The primary issue is whether the person "intends to act in an official capacity or to exercise official responsibilities pursuant to state law."[40]  Any act of a state official "in the ambit of their personal pursuits" is not an act taken under color of law.[41]  Above all any conduct which can be characterized as under color of law "must be fairly attributable to the state."[42]

The Court holds that Plaintiff cannot establish that Hodges was acting under color of law. As an initial matter, Plaintiff has failed to come forward with any evidence to support her contention that Hodges had a sexual relationship with her while acting under color of law, which Hodges has denied.  As the nonmoving party, Plaintiff may not rest on her pleadings but must come forward with some evidence to demonstrate that there is a genuine issue for trial.  Plaintiff has not met this obligation in this case.  Therefore, there is no evidence before the Court from which a reasonable juror could find that Hodges had a sexual relationship with Plaintiff while acting under color of law.

Nevertheless, even if there was evidence of such a relationship, Plaintiff cannot establish that Hodges was acting under color of law when he was sexually involved with Plaintiff.  None of the alleged sexual activity took place at the Juvenile Court Detention Center while Plaintiff was housed there.  None of the alleged sexual activity took place while Hodges was on duty or acting in his official capacity as an employee of Shelby County.  None of the alleged sexual

_____

law.").

[39] *Waters*, 242 F.3d at 359.

[40] *Id*.

[41] *Id*.

[42] *Id*. (citations omitted)

activity took place while Hodges was in a position to supervise Plaintiff. Thus, Plaintiff cannot show that Hodges was acting "in the course of performing an actual duty of his office."

Likewise, none of Hodges' alleged conduct taking place after Plaintiff's release from Juvenile Court can be said to have occurred under color of law. Plaintiff has alleged in the Complaint that Hodges used his position to access Juvenile Court records to find her telephone number and contact her in California. Although unsworn and unattested, Plaintiff's own statement given to the Nashville authorities contradicts this assertion and indicates that she contacted Hodges. Moreover, Hodges has produced an affidavit in which he affirms that Plaintiff telephoned him from California. Hodges has also averred that Plaintiff's sister called him about Plaintiff and her need to return to Memphis to retrieve her belongings. Consequently, Plaintiff has failed to produce any evidence beyond her pleadings to show that Hodges used any of his actual or apparent authority as a state actor to initiate the alleged relationship.

Plaintiff has also failed to prove that Hodges abused his position to force her into a sexual relationship with him. Plaintiff has alleged that after buying her bus ticket to Memphis, Hodges coerced her into a sexual relationship by threatening to send her back to California if she refused. In her Response to the Motions before the Court, Plaintiff argues that "Hodges was able to exercise such fear and control only because he was operating with the presumed authority of the government of Shelby County." Pl.'s Resp. 4. Plaintiff has failed to adduce any evidence or any legal authority whatsoever for this contention. Hodges' affidavit states that he never had any more contact with Plaintiff after he purchased her bus ticket. In fact, the record shows that Plaintiff used the bus ticket to come back to Memphis on or about February 12, 2006, and yet she came to be in Nashville by February 14 and was arrested there on February 15, 2006. Thus,

Plaintiff spent only two days at the most in Memphis after Hodges purchased the bus ticket for her. No reasonable juror could find from this evidence that Hodges used his apparent authority to trap Plaintiff in Memphis when she came to Memphis and left for Nashville after so brief a time.

Additionally, even if Plaintiff feared that Hodges could have her returned to California, Hodges was in no better position than other people in Plaintiff's life to have her sent back. The record makes it clear that several individuals besides Hodges had knowledge of Plaintiff's whereabout during this time and had the opportunity to have Plaintiff returned to California. Plaintiff's sister had Plaintiff arrested in Memphis, which led to her detention at the Shelby County Juvenile Court in January 2006 and her return to California on February 1, 2006. Later in February 2006 her aunt Lula Pope had her arrested in Nashville and returned to California. Plaintiff has failed to explain how Hodges was able to control her by his threats to send her back to California when it appears that her own family knew about her movements and had her sent back to California on more than one occasion. There is simply no evidence that Plaintiff would have felt trapped or coerced by any threat from Hodges just because he appeared to act under his authority as an employee of Shelby County. Therefore, the Court holds that no reasonable juror could find that Hodges acted under color of law and used his apparent authority to threaten to have Plaintiff returned to California when others were in just as good a position to have her apprehended and sent back.

Plaintiff has completely failed to carry her burden to show that evidence exists which would create a genuine issue for trial. Even if the Court accepted that a sexual relationship existed between Plaintiff and Hodges, a proposition for which there is no evidence in the record,

the Court concludes as a matter of law that Hodges was not acting under color of law. Instead the alleged relationship would have occurred in the ambit of Hodges' personal life and places his conduct beyond the scope of Section 1983. Therefore, the Court holds that Hodges is entitled to summary judgment as to Plaintiff's Section 1983 claim against him.

### *III.State Law Claims*

This leaves Plaintiff's state law claims against Hodges. Although not entirely clear from the Complaint, it appears to the Court that Plaintiff has alleged a common law tort claim against Hodges for assault. It is settled law that the district court may exercise jurisdiction over a pendent state law claim, even after the basis for removal to federal court has been eliminated, if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity.[43] Generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well.[44] Therefore, Plaintiff's tort claim against Hodges is dismissed.

### <u>CONCLUSION</u>

Plaintiff has failed to present any evidence from which a reasonable juror could return a verdict in her favor. Defendant Shelby County is entitled to summary judgment as to Plaintiff's Section 1983 claim because Plaintiff has failed to establish that Shelby County had a policy or custom evidencing a deliberate indifference to the sexual abuse of minor females at the Shelby

---

[43] *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

[44] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) (citing *Gibbs,* 383 U.S. at 726).

County Juvenile Court. Defendant Henry Hodges is entitled to summary judgment as to Plaintiff's Section 1983 claim against him because Plaintiff cannot prove that Hodges had a sexual relationship with him or that if there was such a relationship, he was acting under color of law. Having dismissed the claims which formed the basis of this Court's jurisdiction, the Court also dismisses Plaintiff's common law tort claim against Hodges. Therefore, Defendants' Motions for Summary Judgment are **GRANTED**.

       **IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date:  January 22, 2009.